IN THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTHONY HILLIARD,        )
                         )
      Petitioner,        )
                         )
v.                       )    CASE NO.: 04-40170-PBS
                         )
DAVID L. WINN,           )
                         )    MOTION IN OPPOSITION TO
      Respondent.        )    GOVERNMENT'S RESPONSE AND
                         )    REQUEST FOR SANCTIONS.
                         )

## INTRODUCTION

The Petitioner, Anthony Hilliard, register number 18518-051, presented to Dr. Cheryl Renaud on August 5, 2004, in crisis for a brief counseling session. The conclusion of the BRIEF COUNSELING SESSION REPORT unambiguously states that petitioner was not considered to pose an immediate threat to himself or others. The report further states this diagnostic conclusion was communicated to Petitioner's UNIT TEAM. In spite of this diagnostic conclusion by PSYCHOLOGY SERVICES, SIS Lieutenant A. COLON placed Petitioner in administrative detention for pending SIS investigation for threats. While in administrative detention Petitioner made good faith attempts to address his grievances through the administrative remedy program. It was in the face of staff reluctance to provide the required INFORMAL RESOLUTION and ADMINISTRATIVE REMEDY FORMS, the Petitioner filed this action in the court under section 2241 in an effort to preserve his rights and to address the issues of further staff retaliation. The government's response of October 4, 2004, contained NON-PUBLIC information of a medical/ psychological nature the Petitioner has a reasonable expectation of privacy, and this NON-PUBLIC information was released by the Psychology Department and Legal

Services Department, at FMC Devens, without Petitioner's explicit signed authorization. Petitioner does have a cause for action and liberty interest in that:

(A) Petitioner has a reasonable expectation of privacy in his confidential records from unauthorized release.

(B) Petitioner was found through formal diagnosis by Psychology Services to not be a threat. Petitioner has a reasonable expectation for non medical professional staff such as Custody, Case Management, and SIS to <u>not</u> second guess the professional formal opinions of qualified medical/ psychological staff.

(C) Petitioner has a reasonable expection of being able to address grievances informally and through the Administrative Remedy Program without staff retaliation.

(D) Petitioner has a reasonable expectation for BOP staff to follow the BOP published Program Statements and the statutes they are derivative of.

## BACKGROUND AND FACTS

1. On July 28, 2004, Petitioner made a request for transfer to his Unit Manager with a notice of waiver on travel distance from his home area (PETITIONER'S EXHIBIT "L"). Petitioner made this initial request in general terms without reference to any specific concerns. The Unit Manager claimed Petitioner did not bring the issue of a transfer request to the attention of his Unit Team. Petitioner claims he did bring this issue up at Team meeting. It is significant to note the Petitioner had changed units and had a new Unit Team. Petitioner has not had a Unit Team meeting since his placement in H-Unit.

2. At the time of Petitioner's request for transfer in July of 2004, H-Unit was being phased out as a Residential Drug treatment unit and the SOMP program had been planned to replace the Residential Drug treatment program in H-Unit. Prior to this time SOMP eligible inmates had been housed in N-Building or the hospital. As Residential Drug treatment program inmates were being transferred out to other institutions, the SOMP eligible inmates were being housed in H-Unit. This series of moves created controversy in the institution as "H" gained notoriety among the inmate population as the "SEX OFFENDERS UNIT." Many SOMP eligible inmates began to complain through informal and formal administrative procedures. Some SOMP eligible inmates were transferred back to N-Building out of their fear for their safety.

3. A transfer to another institution for "ADJUSTMENT PURPOSES" is a legitimate request under BOP policy. However, after Petitioner's initial request for transfer Petitioner was

transferred to H-Unit. Petitioner has addressed this transfer to H-Unit and its timing to FMC Devens staff without being able to get a response. Petitioner is of the opinion his transfer to H-Unit was retaliatory in nature.

4. In the face of many SOMP eligible filing administratively, making general complaints, and threating legal action under the ALBANY DECISION (Note New York state inmates recently prevailed in the courts to have a New York State equivalent of the FMC Devens SOMP program declared unconstitutional); the BOP has been under pressure to make adjustments in the SOMP program. One of these adjustments made was to drop the plan for H-Unit to be the program unit for SOMP eligible inmates. SOMP eligible inmates are now dispersed throughout all the units in the institution.

5. At the time of Petitioner's transfer to H-Unit, H-Unit was only in the process of changing back to a regular unit. There was a disproportionate number of SOMP eligible inmates still in H-Unit. Many of these inmates have alternative sexual orientations, including partially completed sex change operations (predominant female anatomical features). Some of these people act out on their proclivities without any effort to conceal their lewd behavior. FMC Devens staff has effectively turned an administrative blind eye towards this behavior! This position has been informally adopted inspite of this type of lewd conduct being against BOP rules. (Refer to Government Exhibit "B" page 9 of the A&O Handbook which under rules of physical contact prohibits OVERT SEXUAL BEHAVIOR).

6. Many SOMP eligible inmates are incarcerated under statutes

known as the ASHCROFT vs. FREE SPEECH controversy. Others are SOMP eligible due to past alleged conduct that may in fact not be a valid reason for placement in the SOMP program. These inmates are at various stages of administrative and legal challenges to the SOMP program itself and/or their placement in it. Some of the SOMP eligible inmates are flat out refusing to participate in any way with the SOMP program. As a consequence of this outright refusal, and FMC Devens staff failure to take meaningful enforcement measures; the inmates on SOMP refusal status are under no management whatsoever for their proclivities.

7. Petitioner has made it known to staff that he has psychological issues with being around parties that OVERTLY ACT OUT their sexual devience. Petitioner complained of being in a unit that still has a disproportionate number of these SOMP eligible inmates that are not in compliance with the SOMP program of the rules of the BOP. Petitioner was placed in S.H.U. by custody staff for allegedly posing a threat to SOMP eligible inmates. This action was taken inspite of Psychology Services staff finding petitioner did not pose a threat to himself or others. Petitioner was released from S.H.U. lock up back into the general inmate population after an investigation showed Petitioner did not make threats as claimed by SIS in the Administrative Detention Order of August 6, 2004 (Petitioner's Exhibit "J").

8. Petitioner made good faith efforts to address his complaints through the Administrative Remedy program. Petitioner is aware of the availability of the three tier Administrative Remedy program as outlined by the Government in the argument of their response. Petitioner was rebuffed by members of Unit Team when

he initially requested to be provided the appropriate Administrative Remedy forms while in S.H.U.. Petitioner had to make his request for Administrative Remedy forms to the Warden -verbally- and to the Associate Warden in writing (Refer to Petitioner's Exhibit "B") before Unit Team finally and reluctantly provided Petitioner with the appropriate Administrative Remedy forms.

9. Petitioner filed a section 2241 complaint in Court (the present action) as an effort to preserve his right of access to the Courts in the event staff delayed his efforts any further in the timely access to the Administrative Remedy process. Petitioner had been told to refile his initial BP-9 after Unit Team was unable to locate his initial BP-8 INFORMAL RESOLUTION form or a receipt of his BP-9 from the institution Administrative Remedy coordinator. Petitioner then sent copouts and made supplemental administrative filings in an effort to keep his administrative paperwork on a timely track. (Refer to Petitioner's Exhibits "B","C","D","E","G","H" and "M").

10. Petitioner has been labeled as a troublemaker by institution staff because he has been properly assertive in in pursuing his issues through the informal resolution and Administrative Remedy programs. Petitioner fears further retaliation from staff over his efforts to continue his administrative due process.

11. The PLRA mandates inmates exhaust all available Administrative Remedies before an inmate has standing before the Courts. Delays, misinformation, administrative retaliation, and other impediments by staff effectively deny an inmate meaningful access to the

Courts. Petitioner has noted there is a pattern and practice by FMC Devens staff to delay administrative paperwork beyond the 20 day filing period set out to initiate the formed Administrative Remedy process.

12. Staff has provided Petitioner with incorrect forms to file informal resolution requests. Petitioner's Exhibit "O" is an example of the correct form for informal resolution requests. Petitioner's Unit Team has consistently refused to provide the correct informal resolution forms. Petitioner's Unit Team has consistently given Petitioner information contrary to policy and the statutes in 28 CFR related to correct processing of informal and formal Administrative Remedy requests. It is the information and belief of Petitioner that this has been a deliberate effort by staff to obstruct the Administrative Remedy exhaustion requirements of the PLRA and amounts to a due process constitutional violation. Petitioner is not the only inmate complaining of this pattern and practice at FMC Devens.

13. The Warden's BP-9 response (Petitioner's Exhibit "F" page 3 Warden's Administrative Remedy response remedy #351981-F1) to Petitioner's original BP-9 advises Petitioner of the availability of Psychology Services to help deal with personal psychological problems related to difficulties in coping with past family issues related to sex offender crimes. Petitioner presented to Psychology Services for help in this area having a reasonable expectation of privacy. The Government has violated Petitioner's privacy rights by releasing RAW psychological data, outside of a formal psychological interpretive report format, without the express authorization of the Petitioner.

This willful disregard of the Petitioner's privacy rights and BOP records release policies is an example in point as to how inmates cannot trust the FMC Devens staff in proper handling of confidential medical/ psychological records in any medical or psychological treatment program.

14. The willful disregard of Petitioner's privacy rights to medical/ psychological records, that the Petitioner has a reasonable and statutory expectation of privacy, is a clear cut example of the privacy rights violations being litigated by many of the SOMP eligible inmates as the basis of their categorical refusal to participate in any aspect of the SOMP program at FMC Devens.

15. The SOMP program at FMC Devens has no formal statutory basis. There is no specific reference in any BOP program statement, nor is there any direct reference in the 28 CFR. The only written documentation for the FMC Devens SOMP program is the <u>SEX OFFENDER MANAGEMENT PROGRAM INMATE HANDBOOK</u>. (Refer to Petitioner's Exhibit "K"). This is an "inmate handbook" not a formal BOP program statement. The institution has claimed authority to establish the SOMP program based on the statute authorizing the BOP to create and administer drug treatment programs. The plain language of the claimed statutory authority does not support the institution's claim, nor does the legislative history of the claimed statute. This is part of the reason few of the SOMP eligible inmates take the SOMP program seriously. The concentration of SOMP eligible inmates at FMC Devens, specifically for the purpose of SOMP management supervision, becomes problematic when there is no effective control

of deviant behavior due to refusal to participate in a program of questionable legal statutory basis. The initial plan to move SOMP eligible inmates to H-Unit was an anemic attempt to pass legitimacy to the SOMP program through putting it in the same physical setting as the residential drug treatment program which has been discontinued here at FMC Devens to make way for FMC Devens' to specialize in sex offender management. The SOMP program at FMC Devens is an entirely different program than the SOTP (Sex Offender Treatment Program) at FMC Butner. The SOMP program is very similar to the already legally discredited sex offender management program in the State of New York. Lack of effective management of SOMP eligible inmates and administrative/ legal challenges are but some of the problems with having a disproportionate number of SOMP eligible inmates in the general inmate population at FMC Devens. Most state facilities have separate facilities to house and manage sex offenders to avoid the problems running rampant in the population at FMC Devens.

16. Petitioner's placement in S.H.U. made filing administrative paperwork difficult because all forms had to be filled out in pencil since pens are not allowed in S.H.U.. As a consequence good legible copies cannot be made. Refer to Petitioner's Exhibit "A" as an example.

17. Petitioner is obviously having ADJUSTMENT PROBLEMS at this institution. Petitioner has not received any major incident reports at FMC Devens. Petitioner has been harassed by staff when he attempted to go through channels to address his psy-chological concerns. The harassment includes placement in ADMINISTRATIVE DETENTION for alleged threats and unauthorized

release of RAW psychological data. A transfer for adjustment purposes is an obvious solution.

## ARGUMENT

### PETITIONER HAS STANDING IN COURT

A. Petitioner had attempted to redress his issues through the Administrative Remedy program before filing this action in Court. Respondent has a demonstrated pattern and practice of effectively obstructing access to the informal and formal Administrative Remedy process, and thus by logical and legal extension meaningful access to the Courts.

Petitioner initially had requested through members of his Unit Team the appropriate forms to informally attempt to resolve his issues. The INFORMAL RESOLUTION is a required step to initiate the formal Administrative Remedy process (Refer to Petitioner's Exhibit "O"). Petitioner has made numerous requests to his Unit Team for the INFORMAL RESOLUTION form also known as a BP-8½. Instead of providing Petitioner with the correct form in a timely manner, Petitioner's Unit Team advised him to file a copout request. Under BOP policy federal inmates have 20 calendar days to file a BP-9 formal Administrative Remedy. The 20 days includes the time spent in attempts to informally resolve the matter. Should an inmate fail to meet the 20 day filing time for formal Administrative Remedies, the inmate loses his standing to file Administratively on that issue. The staff at FMC Devens routinely delay informal resolution attempts past the formal Administrative Remedy filing deadline. These delays are many times exacerbated by staff providing incomplete and inaccurate information on the issues or the

-10-

administrative process itself.

In the Petitioner's case Unit Team staff refused to provide the correct informal resolution form, then once submitted the Unit Team claimed Petitioner's BP-8½ had been lost or otherwise misplaced. Petitioner being locked down in S.H.U. limited his access to staff. Staff appeared to be ignoring Petitioner's good faith attempts to start the Administrative Remedy process in a timely manner. Petitioner then filed the present action in Court as a 2241 matter in an attempt to preserve his right of access to the Courts in the face of FMC Devens staff impediments.

These impediments to administrative filings are defacto institution policy as the Warden has tacitly approved/ allowed his Unit Teams to routinely delay inmates access to the Administrative Remedy program. Inmates who continue to attempt to file in the face of these tactics are generally rejected at the REGIONAL level in their BP-10's as being out of time. Petitioner being aware of the pattern and practice of respondent and his subordinates wished to avoid a similar fate of other similarly situated inmates. Petitioner filed the present action, and at the same time continued to address staff on procedural issues such as: no response to BP-8½'s, no receipts from the FMC Devens Administrative Remedy coordinator.

Petitioner has had to file supplemental Administrative Remedies based on incomplete and inaccurate information regarding issues related to preparation of the original issue. Refer to Petitioner's Exhibit "H" which is an administrative challenge to Respondent's refusal to provide BOP program statements

-11-

needed for Petitioner to file objections to the Government's response in this matter. Petitioner has charged the Respondent refused to provide program statement unders the claim the material could only be made available through FOIA/PA. Petitioner's Exhibit "H" page 3 is a copy of 28 CFR section 513.43 which states simple local access procedures to review BOP program statements are preferable to FOIA procedures. This stated position is in direct opposition to what RESPONDENT has erroneously tried to lead Petitioner to believe. Petitioner has had to be assertive in the pursuit of his administrative claims. Petitioner now finds himself viewed by Respondent and staff as a troublemaker because he has attempted to preserve his rights of meaningful access to the Courts. Staff had advised Petitioner of the need to refile the original BP-8½ when Unit Team was unable to locate it. This refiling as advised by Unit Team would have put Petitioner well outside the time limit for filing Administrative Remedies, and thus denied Petitioner meaningful access to the Courts. Petitioner's attempt to use the Administrative Remedy program was made in good faith. Petitioner's filing of the present action was made out of desperation to preserve his standing in Court in the face of RESPONDENT'S pattern and practice of obstructing and/ or delaying administrative paperwork.

## PETITIONER HAS A PROTECTED LIBERTY INTEREST

B. Petitioner has a reasonable expectation of privacy when he presents for medical or psychological treatment or counseling. The RESPONDENT has violated and reasonable expectation of

privacy by the unauthorized release of NON-PUBLIC information without the express written consent of the Petitioner. Refer to RESPONDENTS'S Exhibit "E". The Respondent's release of Petitioner's RAW psychology session data, when Petitioner was not deemed a threat to himself of others, should merit the Court's formal sanction. Failure by the Court to sanction Respondent's conduct will serve to undermine inmate participation in medical/ psychological treatment programs, including the SEXUAL OFFENDERS MANAGEMENT PROGRAM. The lack of formal Court sanctions will mean the Petitioner and inmates in general at FMC Devens can have no reasonable expectation of privacy when they participate in medical/ psychological programs at FMC Devens.

Petitioner has a reasonable expectation to be free of staff reprisal for his attempts to utilize the Administrative Remedy program, or to seek redress in the Courts. Respondent should be sanctioned by the Court for deliberate obstruction of the Administrative Remedy process, and by logical and legal extension meaning access to the Courts. The Court's failure to sanction Respondent will signal the Court's approval of Respondent's tactics to obstruct and delay the Administrative Remedy process and meaningful access to the Courts by Petitioner and inmates in general at FMC Devens.

### PETITIONER'S PLACEMENT IN ADMINISTRATIVE SEGREGATION WAS RETALIATORY

C. Respondent has asserted in the Government's response that Petitioners transfer from general inmate population to administrative detention does not involve a protected liberty interest. Petitioner was summarily moved from G-Unit in general population

to H-Unit in general population, summarily after he expressed his wish to be transferred to another institution. Petitioner charges Respondent through the Unit Team transferred Petitioner to H-Unit in reprisal for Petitioner's request for transfer to another institution. Petitioner further charges that Respondent through SIS arbitrarily and capriciously placed the Petitioner under investigation for threats _after_ Psychology Services formally determined Petitioner was _not_ a threat to himself or others. Petitioner was released from Administrative detention after 20 days with the finding that the Petitioner was not a threat to himself or others. While the Respondent has the authority to house Petitioner in any part of the institution, the Respondent is acting in an arbitrary and capricious manner when Respondent filed the ADMINISTRATIVE DETENTION ORDER of August 6, 2004 (Refer to Government Exhibit "G"), after information was developed by Psychology Services that Petitioner was in fact not posing a threat to himself or others. The memorandum for the record by SIS Lieutenant A. Colon completely mischaracterizes Petitioner's remarks to Lieutenant Colon on August 6, 2004, (Refer to Government Exhibit "F"). Petitioner charges Respondent placed Petitioner in administrative detention as part of the announced zero tolerance policy Respondent has towards anyone that has even the alleged appearance of harassing SOMP program eligible inmates. There was no basis for the threats Respondent claimed Petitioner had made. The determination was made prior to Petitioner's placement in administrative detention, thus making this placement having at least the appearance of retaliation by Respondent towards Petitioner.

-14-

## PETITIONER'S EXHIBITS

A. August 24, 2004  Copout request for BP-8½  Complaint against Unit Team and SIS.

B. September 22, 2004  Copout to Associate Warden Schult for missing BP-8 and no receipt for BP-9.

C. September 23, 2004  Copout request for BP-8½ for no administrative remedy receipt and missing BP-8½.

D. September 23, 2004  Copout to CMC Ms Adams for missing BP-8½ and no BP-9 receipt.

E. September 29, 2004  Copout to CMC Ms. Adams for delay in administrative paperwork.

F. September 3, 2004  BP-9 #351981-F1 for retaliation tactics.

G. September 26, 2004  BP-9 to FMC Devens administrative remedy coordinator.

H. October 13, 2004  BP-9 for failure to provide p.s.5310.12 through simple local access procedures.

I. October 15, 2004  BP-9 for improper release of psychology records.

J. August 6, 2004  Administrative Detention Order.

K. SOMP HANDBOOK

L. July 28, 2004  Copout to Unit Manager for transfer request.

M. August 2, 2004  Copout request for BP-8½.

N. September 28, 2004 Copout request for Psychology Data System contact notes/ session records.

O. Exemplar of BP-8½ INFORMAL RESOLUTION in current use at FMC Devens.