# United States District Court
# District of Massachusetts

ANTHONY HILLIARD,
     Petitioner,

     v.               CIVIL ACTION NO. 04-40170-PBS

DAVID L. WINN,
     Respondent.

## *REPORT AND RECOMMENDATION ON RESPONDENT'S RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS REQUESTING PETITION BE DISMISSED (#5) AND* <u>*ON REQUEST FOR SANCTIONS (#9)*</u>

COLLINGS, U.S.M.J.

### *I. Introduction*

On August 22, 2004, Petitioner Anthony Hilliard ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition for Writ of Habeas Corpus," #1), seeking a transfer to another institution,

challenging his transfer to H-Unit and his 20-day placement in administrative

detention as retaliatory, requesting that prison officials be enjoined from "abuse,

cruel and unusual punishment, and retaliatory tactics" and seeking to preserve

his ability to continue appealing his denial of request for administrative remedy.

Petitioner also requests that sanctions be imposed on Respondent David L. Winn

("Respondent") based on the release of Petitioner's raw psychological data in

response to his petition.  Respondent, Warden of the Federal Medical Center

Devens ("FMC Devens"), has filed a motion to dismiss the petition under Fed.

R. Civ. P. 12(b)(1) for failure to exhaust administrative remedies and 12(b)(6)

for failure to state a claim upon which relief can be granted ("Government's

Response to Petition for Writ of Habeas Corpus" #5), as well as a motion in

opposition to Petitioner's request for sanctions ("Response to Petitioner's

Opposition to Motion to Dismiss and Request for Sanctions," #11).

Respondent's Response to Petition for Writ of Habeas Corpus has been referred

to the undersigned for a Report and Recommendation (#7).

## II. The Facts

On August 16, 2001, Petitioner began serving a 156-month sentence in

a New Mexico federal prison after being convicted of Possession With Intent To

Distribute 50 Grams and More of Cocaine Base and Possession With Intent To

Distribute More Than 500 Grams of Cocaine (#5, pp. 1-2). In January of 2004, Petitioner was transferred to FMC Devens in Massachusetts (#5, p. 2).

On July 28, 2004, Petitioner submitted an "Inmate Request to Staff" form to his Unit Manager, Janis Johnson, requesting that he be transferred to another institution, space permitting ("Motion in Opposition to Government's Response and Request for Sanctions," #9, p. 3 [*see also* #9, Ex. L]). He did not list the reason for his request at that time (*Id.*). Shortly thereafter, Petitioner was placed in H-Unit (*Id.* at pp. 3-4). Petitioner asserts (and Respondent does not deny) that at that time, H-Unit was in the process of transitioning to a regular unit from one that housed, at least predominantly, sex offenders who were involved in a rehabilitative program called the Sex Offender Management Program ("SOMP") (*Id.*). Petitioner apparently felt uncomfortable in H-Unit due to sexual abuse that children in his family had suffered in the past. (*Id.* at p. 3)

In early August, 2004, Petitioner complained to SIS Lieutenant Alan Colon ("Lieutenant Colon") that he did not want to live in H-Unit because children in his family had been molested ("Declaration of Ann H. Zgrodnik, #6, Ex. F ["Memorandum from SIS Lieutenant Alan Colon"]). Lieutenant Colon told Petitioner that sex offenders are housed throughout the institution, suggested

3

that Petitioner consult someone on the psychology staff, and informed him that he would look into his transfer (*Id.*).

On that same day, August 5, 2004, Dr. Cheryl Renaud ("Dr. Renaud"), an institution psychologist and director of SOMP, saw Petitioner (#5, p. 2). Petitioner related to Dr. Renaud that he was concerned about being moved into what he dubbed the "sex offender unit" because members of his immediate family had been sexually abused and that he "hates" anyone who abuses children (*Id.* at p. 3). Petitioner stated that he would not harm anyone at that time, but should his request to be transferred be denied, he would return to the psychology unit to inform them that he would harm someone in order to be transferred from his unit to Special Housing Unit ("SHU"), the administrative detention unit (#6, Ex. E ["Brief Counseling Session"]).[1] Dr. Renaud did not consider Petitioner to pose an immediate threat to himself or others (#5, p. 3).

In the morning of August 6, 2004, Petitioner was placed in SHU pending an SIS investigation for making threats, after approaching Lieutenant Colon and telling him that he felt he might "snap and hurt any of the sexual offenders"

---

[1]

Administrative detention is "the status of confinement of an inmate of a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population." 28 C.F.R. § 541.22. Further, "if consistent with available resources and security needs of the unit, the Warden shall give an inmate housed in administrative detention the same general privileges given to inmates in the general population." 28 C.F.R. § 541.22(d).

(#6, Ex. F).  Petitioner remained in SHU until being returned to H-Unit on August 26, 2004 (#5, p. 4).  On August 24, 2004, Petitioner submitted a Request for Administrative Remedy, seeking to be transferred to another institution (#5, p. 4).

This request was denied on September 24, 2004 by Respondent (#5, p. 4).  Respondent cited the reasons for denial as Petitioner's current imprisonment within 500 miles of his residence pursuant to Bureau of Prisons Statement 5100.07 and the availability of psychological services for inmates who may need that type of assistance (*Id.*).  Respondent also related in his response that Petitioner would have 20 days from that date to appeal the decision (*Id.*).

Petitioner submitted his appeal on October 5, 2004 (#9, Ex. F, p. 4 ["Regional Administrative Remedy Appeal"]).  He received a response to this appeal on November 8, 2004, notifying him that his appeal was denied because prison staff are permitted to use discretion with respect to prisoner placement, and because his placement in H-Unit was consistent with Program Statement 5100.07 ("Motion Contesting Factual Allegations in Respondent's Motion, #13, Ex. S ["Regional Director's Response to Administrative Remedy Appeal"]).  The response further advised Petitioner that he could appeal the decision to the

General Counsel, Federal Bureau of Prisons within 30 days (*Id.*).

On November 15, 2004, Petitioner filed a Central Office Administrative Remedy Appeal (#13, Ex. T, p. 1).  Although filled out on a form titled "Central Office Administrative Remedy Appeal," the appeal was apparently wrongly classified as a Regional Appeal (the level of appeal that Petitioner had already submitted on October 5, 2004) or incorrectly delivered to the Northeast Regional Office instead of the Central Office (#13, Ex. T, p. 2).  The appeal was denied on November 22, 2004 because it was submitted to the "wrong level" (#13, Ex. T, p. 2).

In addition, throughout late September and October of 2004, Petitioner submitted numerous requests for documents related to his petition, for

explanations as to why he had not been given some documents requested, and for explanations as to why his psychological records were released in court without his permission (#9, Ex. C, D, E, G, H, I, N).

### III. Discussion

Respondent has moved to dismiss Petitioner's petition 1) for lack of subject matter jurisdiction, in that Petitioner did not exhaust available

administrative remedies before bringing the petition, and 2) for failure to state a claim upon which relief can be granted, in that Petitioner has no liberty interest in where he is imprisoned.

A.  Failure to Exhaust Administrative Remedies

It is well-established that before bringing a petition for writ of habeas corpus, a federal prisoner must exhaust all available administrative remedies. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629 (2 Cir., 2001).  The exhaustion requirement includes all stages within a single administrative remedy.  *U.S. v. Brann*, 990 F.2d 98 (3 Cir., 1993).

The parties are not in agreement as to whether Petitioner has exhausted

all administrative remedies available to him.[2] The administrative remedy procedure for prisoners is set out both in 28 C.F.R. 542.10 *et seq.* and in the FMC Devens Inmate Handbook (#6, Ex. B). Petitioner completed the first tier of the administrative remedy process by submitting an "Inmate Request to Staff" form to his Unit Manager on July 28, 2004. When that request was denied, Petitioner completed the second tier of the remedy process by filing a "Regional Administrative Remedy Appeal" form on October 5, 2004. After this appeal was denied, Petitioner filled out another appeal form, which if delivered to the correct location would have constituted completion of the third tier of the procedure. However, this appeal was delivered to the wrong level, a regional office rather than the Central Office.

Some exceptions to the requirement that a federal prisoner must exhaust administrative remedies before seeking habeas relief from a federal court have been recognized. For example, courts have relieved a prisoner of the exhaustion requirement when the exhaustion would almost certainly not be fruitful, when the prisoner may suffer injury without judicial intervention, or if the prisoner

---

[2]

The parties dispute whether Petitioner has exhausted all three tiers of the three-tiered administrative remedy process. Respondent claims that Petitioner has exhausted one of the three tiers, Petitioner asserts that he has exhausted two or three tiers and the documents reflect that Petitioner has exhausted at least two tiers.

would have served his complete sentence by the time he could exhaust available administrative remedies. *See, e.g., Pimentel v. Gonzales*, 367 F. Supp.2d 365 (E.D.N.Y., 2005), *U.S. v. Paige*, 369 F. Supp.2d 1257 (D. Mont., 2005), *Colton v. Ashcroft*, 299 F. Supp.2d 681 (E.D. Ky., 2004), *Monahan v. Winn*, 276 F. Supp.2d 196 (D. Mass., 2003), *Camper v. Benov*, 966 F.Supp. 951 (C.D. Cal., 1997).[3] None of these exceptions applies here.

Thus, at the core, the issue is whether Petitioner can be considered to have exhausted administrative remedies given that his final appeal which was supposed to have been delivered to the Central Office was instead received by the regional office.   The record simply is not clear as to whether it was Petitioner who caused the appeal to be delivered to the wrong office or whether Respondent was somehow responsible for the mix-up.   And, as will be seen below, whether Petitioner indeed did or did not exhaust his administrative remedies need not be determined because the Court shall recommend that

---

[3]

Respondent's reliance on *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001) is misplaced. While the Supreme Court in *Booth* did state that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," such a rule does not apply in the instant habeas case because the *Booth* case was a Prison Litigation Reform Act ("PLRA") case, not a § 2241 case. It is well-established that the "'explicit exhaustion requirements which are contained in...the...AEDPA...and the...PLRA do not apply to habeas petitions filed under 28 U.S.C. § 2241.'" *Monahan*, 276 F. Supp.2d at 204, quoting *U.S. v. West,* 2003 WL 1119990, *2 (E.D. Mich., Feb. 20, 2003); *see also U.S. v. Catalan-Roman*, 329 F. Supp.2d 240, 251 (D.P.R., 2004)("the statutory PLRA exhaustion requirement does not apply to § 2241 proceedings.").

Respondent's motion to dismiss be allowed on the grounds that Petitioner has failed to state any claim upon which relief can be granted.[4]

## B.  Failure to State a Claim

Petitioner has listed three grounds as bases for habeas relief, all of which are rooted in Respondent's purported retaliation against Petitioner.  Petitioner claims his request to be transferred to another institution triggered retaliation by prison staff in multiple forms consisting of 1) moving Petitioner into H-Unit which housed sex offenders, 2) placing Petitioner in administrative segregation without cause, and 3) impeding Petitioner's ability to go through the administrative remedy process (#1, p. 4).  Petitioner is seeking that he be transferred to another institution, that Respondent refrain from abuse and cruel and unusual punishment and that Respondent cease retaliation against Petitioner (#1, p. 6).

"[C]hallenges to the 'manner, location, or conditions of a sentence's execution' are proper subjects of a habeas corpus action under [28 U.S.C.] §

---

[4]

    Even if Petitioner has not exhausted all administrative remedies, the Court can still proceed to consider the merits of Petitioner's claims. *See, e.g., Gagne v. Fair*, 835 F.2d 6, 9 (1 Cir., 1987)(citing *Granberry v. Greer*, 481 U.S. 129 (1987))(court is "not deprived of jurisdiction to consider the merits of an application for habeas relief because petitioner has not" exhausted his remedies); *Lyle v. Silvey*, 805 F. Supp. 755, 757 (D. Ariz., 1992)(where parties disputed whether petitioner had exhausted administrative remedies, court proceeded directly to merits of petition).

2241." *Catalan-Roman*, 329 F.Supp. at 250, citing *Gonzalez v. U.S.*, 150 F. Supp.2d 236, 240 (D. Mass., 2001) citing *Hernandez v. Campbell*, 204 F.3d 861, 864 (9 Cir., 2000). *See also Krilich v. Winn*, 2004 WL 2931265, *1 (D. Mass., Dec. 20, 2004)(same). Title 28 U.S.C. § 2241 explicitly sets out that no writ of habeas corpus shall issue unless the prisoner "is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States, or...in violation of the Constitution or laws or treaties of the United States." In other words, in order for Petitioner here to state a valid claim to obtain a writ of habeas corpus, he must allege that his custody violates the laws or Constitution of the United States.

An allegation that a prisoner was placed in a particular custodial setting in retaliation for some other act of the prisoner is not sufficient to state a claim pursuant to petition for a writ of habeas corpus if the custody itself does not violate the laws or Constitution. However, retaliation may be enough to state a claim under 42 U.S.C. § 1983. For example, in the case of *Babcock v. White*, 102 F.3d 267 (7 Cir., 1996), a prisoner alleged that prison officials violated his First Amendment rights by retaliating against him for availing himself of prison grievance procedures. *Babcock,* 102 F.3d at 270. The Court ruled that the

11

prisoner stated a valid claim under § 1983.[5]

However, the only issue in a habeas case is whether the prisoner's custody itself is in violation of the laws and Constitution of the United States. The Court will now discuss the merits of each of the three grounds upon which Petitioner claims that his custody is unconstitutional.

### 1. Petitioner's Placement in H-Unit

Petitioner challenges his placement in H-Unit soon after submitting an "Inmate Request to Staff" form that he be transferred to another institution as retaliatory. That is, his claim is that Respondent, by putting him in H-Unit, was retaliating against him for making a request to be transferred. As stated, *supra,* this allegation may be the proper basis for a § 1983 suit, but it will only support the granting of the writ of habeas corpus if the petitioner's custody is itself unlawful. In other words, for purposes of habeas corpus, the prison officials' motive is immaterial; what matters is whether the custody itself either illegal or

---

[5]

In so holding, the Seventh Circuit relied on a Ninth Circuit case, *Pratt v. Rowland,* 65 F.3d 802 (9 Cir., 1995) in which that Court wrote that:

> To succeed on his retaliation claim, [Babcock] need not establish an independent constitutional interest in either assignment to a particular prison or placement in a single cell, because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities.

*Babcock,* 102 F.3d at 275 *quoting Pratt,* 65 F.3d at 806 (emphasis in original).

unconstitutional.

The relevant inquiry then is whether Respondent's purported retaliation of placing Petitioner in H-Unit was unconstitutional. Courts have consistently held that prisoners do not have a liberty interest in the particular institution or prison unit to which they are assigned. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25, *reh'g denied,* 429 U.S. 873 (1976). Moreover, inmates do not have a liberty interest in being assigned a particular security classification. *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Olim*, 461 U.S. at 245; *Meachum* 427 U.S. at 224-25.

Thus, Petitioner has stated no claim here because the alleged retaliation by Respondent did not make his custody unconstitutional. That is, there is no constitutional right for a prisoner to be housed in a certain prison or certain prison unit. Respondent's actions in placing Petitioner in H-Unit did not render his custody unconstitutional. Therefore, Petitioner should not be afforded habeas relief on this ground of his petition.

### 2. Petitioner's Placement in Administrative Segregation

Petitioner claims his placement in administrative segregation for 20 days was retaliatory and unwarranted because Dr. Renaud's professional opinion was that Petitioner did not pose an immediate threat to himself or others. Because

this challenge, like the prior challenge, has to do with the location of Petitioner's sentence, it is appropriate for a habeas corpus petition.

A warden has the power to delegate responsibility of placing prisoners in administrative segregation to a lieutenant, as was the case when Lieutenant Colon made the decision to place Petitioner in administrative segregation on October 6, 2004.  28 C.F.R. § 541.22(a).  A prisoner may be placed in administrative segregation for a number of reasons, including if he "is pending an investigation of a violation of Bureau Regulations." 28 C.F.R. § 541.22(a)(2). Petitioner was in fact undergoing an  investigation that he had made threats that he would hurt someone.

The Court must determine whether Petitioner has stated a claim that Respondent's actions of placing Petitioner in administrative segregation were unconstitutional.  "It is well-established that inmates do not have a right under the Constitution itself to remain in the general prison population or to be free from administrative segregation." *Rodi v. Ventetuolo*, 941 F.2d 22, 25 (1 Cir., 1991).  An inmate can only acquire a protected liberty interest if he experiences "freedom from restraint [that]...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

14

There is no evidence that Petitioner suffered an atypical or significant hardship, as he does not claim, nor do any of the papers reflect, that he experienced any unusually harsh conditions while in administrative segregation, and he was held there only for a short period of time while an investigation was conducted. Further, according to Dr. Renaud, Petitioner implied a preference for placement in administrative segregation over continued housing in H-Unit, so it is clear that Petitioner did not consider administrative segregation to be an atypical hardship.

Moreover, it is unclear from his petition what relief Petitioner seeks for having been placed in administrative segregation for 20 days. He was released from administrative segregation four days after he filed his original habeas corpus petition. Typical relief afforded to prisoners in administrative segregation who have filed a habeas corpus petition has been injunctive in nature, *i.e.*, the placement of the prisoner back in the general prison population. *See, e.g., Catalan-Roman,* 329 F. Supp.2d at 242. To the extent that Petitioner is seeking to be transferred to another institution and seeking an injunction preventing Respondent from "abuse and cruel and unusual punishment," such relief is not warranted on the grounds that Petitioner was housed in administrative segregation because Petitioner did not establish that such

15

placement was unconstitutional.  To the extent that Petitioner is seeking to be released from administrative segregation, such relief is obviously unnecessary and has in essence "been mooted" by the fact that he has already been released. *See Gilday v. Boone*, 657 F.2d 1, 3 (1 Cir., 1981) (holding that release of inmate from segregated detention mooted his complaint seeking injunctive relief from his confinement in segregated detention).  Thus, there should be no relief accorded to Petitioner based on his placement in administrative segregation.

### 3.    *Respondent Impeded Petitioner's Ability to Proceed in Attempting to Obtain Administrative Relief*

In Ground 3 of his petition, Petitioner appears to be claiming that Respondent retaliated against him by delivering his appeal to the wrong office and thus impeding his attempts to pursue his administrative remedies. Moreover, Petitioner contends that Respondent has "consistently refused to provide correct informal resolution forms" and has "consistently given Petitioner information contrary to policy and the statutes in 28 CFR related to correct processing of informal and formal Administrative Remedy requests" (#9, p. 7). The pertinent inquiry would appear to be whether Respondent's actions in mis-

16

delivering Petitioner's appeal[6] and refusing to give Petitioner proper forms and correct information were unconstitutional.

Petitioner argues that Respondent's actions in impeding his access to the administrative process amounted to impeding his "meaningful access to the Courts" (#9, p. 10). Respondent does not address Petitioner's argument on this point. It is well-established that there is a constitutional right to court access. *Rogan v. City of Boston*, 267 F.3d 24, 28 (1 Cir., 2001) citing *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974). And, "it is axiomatic that prisoners have [this same] constitutionally-protected right of meaningful access to the courts." *Boivin v. Black*, 225 F.3d 36, 42 (1 Cir., 2000). Moreover, courts have held that "prisoners have a constitutional right of access to the courts, that by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." *DeWalt v. Carter*, 224 F.3d 607, 618 (7 Cir., 2000), citing *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973). *See also Lavender v. Lampert*, 242 F. Supp.2d 821, 843 (D. Or., 2002) ("prisoners have a constitutional right of access to the courts, which extends to established prison grievance procedures."); *Buckley v. Gomez*, 36 F. Supp.2d 1216, 1227 (S.D.

---

[6]

The Court shall view the record in the light most favorable to Petitioner and assume that Respondent, rather than Petitioner, was responsible for the appeal arriving at the wrong office.

Cal., 1997), *aff'd*, 168 F.3d 498 (9 Cir., 1999)(same).  Thus, a constitutional right may be implicated here–the right of access to the courts.  Conceivably then, Petitioner could have a viable claim that Respondent's actions were retaliatory in that they prohibited his meaningful access to the courts.

However, while Petitioner may have stated a claim, that claim is not properly the subject of a habeas petition because it does not challenge the manner, location, or conditions of his confinement.  In other words, in this ground of his petition, Petitioner asserts that Respondent retaliated against him by impeding his access to the administrative remedy process.  Such a challenge is not addressed to the manner, location or conditions of his confinement; Petitioner's challenge is that his right of access to the courts was hindered by Respondent such that he was unable to utilize the administrative remedy process in order to challenge the location of his confinement.

The purpose of a writ of habeas corpus is "to completely free an inmate from unlawful custody" or to provide a "less restrictive form of custody." *Catalan-Roman*, 329 F. Supp.2d at 250 (citations omitted).  In this ground of the petition, Petitioner is not seeking to be transferred to another institution or even to be put in a different unit within his current institution but appears to be seeking to enjoin the Respondent from "abuse and cruel and unusual

punishment" (#1, p. 6) and to preserve his ability to continue appealing the denial of his request for transfer through the administrative remedy process (#9, p. 2).  Such relief is not provided for with a writ of habeas corpus.  That is, "if a favorable resolution of the action would not automatically entitle the prisoner to release, the proper vehicle is 42 U.S.C. § 1983, [not a writ of habeas corpus]." *McIntosh v. U.S. Parole Comm.*, 115 F.3d 809, 812 (10 Cir., 1997) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5 Cir., 1995) (per curiam), *cert. denied,* 516 U.S. 1059 (1996)).  Here, at least in Ground 3, Petitioner is not seeking release but is asking that the Court enjoin Respondent from its mistreatment of Petitioner.  Thus, Ground 3 is not properly before the Court.

### C.    Petitioner's Motion for Sanctions

Finally, Petitioner requests that sanctions be imposed on Respondent for attaching Petitioner's psychological records to his Motion to Dismiss without his consent.  Such sanctions are unwarranted because Petitioner waived his privacy in the records when he himself put at issue his psychological reaction to being housed with sex offenders.  Such psychological reaction was addressed in the records attached by Respondent to his motion to dismiss.  That is, Petitioner as part of his petition set forth his discomfort at being housed with sex offenders (#1, pp. 4-5).  The report attached by Respondent (#6, Ex. E) is a written

19

report of a counseling session with Petitioner in which Petitioner discusses the
reasons that he did not want to be in the same unit with sex offenders. Thus,
because Petitioner himself put at issue the subject addressed by the contested
medical record, he has waived his privacy interest in that record[7]. *See, e.g.,
Price v. County of San Diego*, 165 F.R.D. 614, 622 (S.D. Cal., 1996)(where
litigant "has raised an issue as to his or her psychological state, the privilege will
be waived."); *Manessis v. New York City Dept. of Transportation*, 2002 WL
31115032, *2 (S.D.N.Y., Sept. 24, 2002)(where "litigant puts his physical or
mental condition into issue in the litigation, he waives his right to privacy in any
relevant medical records."). Therefore, the Court shall recommend that
Petitioner's motion for sanctions be denied.

## IV. Recommendations

For the foregoing reasons, I RECOMMEND that Respondent's motion to
dismiss Petitioner's habeas corpus petition, contained in Respondent's Response
to Petition for Writ of Habeas Corpus (#5), be ALLOWED and that Petitioner's
Request for Sanctions (#9) be DENIED.

## V. Review by the District Judge

---

[7]

Moreover, the Court notes that it appears that everything discussed in the medical record was first
addressed by Petitioner in his own papers.

The parties are hereby advised that pursuant to Rule 72, Fed. R. Civ. P., any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

August 1, 2005.